**CLARKSON LAW FIRM, P.C.**
Ryan J. Clarkson (SBN 257074)
*rclarkson@clarksonlawfirm.com*
Yana Hart (SBN 306499)
*yhart@clarksonlawfirm.com*
Bryan P. Thompson (SBN 354683)
*bthompson@clarksonlawfirm.com*
22525 Pacific Coast Highway
Malibu, CA 90265
Tel: (213) 788-4050
Fax: (213) 788-4070

**COTCHETT, PITRE & McCARTHY, LLP**
Thomas E. Loeser (SBN 202724)
*tloeser@cpmlegal.com*
840 Malcolm Road
Burlingame, CA 94010
Tel: (206) 802-1272
Fax: (650) 697-0577

*Class Counsel for Plaintiffs and the Settlement Class*

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

*In re: Stiiizy Inc., Data Breach Security Litigation*

This Document Relates to:
All Cases

Case No. 2:25-cv-00490-GW-SSC

**CONSOLIDATED ACTION**

Assigned to: Hon. George H. Wu

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION FOR ATTORNEYS' FEES AND COSTS, AND PLAINTIFFS' SERVICE AWARDS**

**Hearing Information**
Date: October 19, 2026
Time: 8:30 a.m.
Location: Courtroom 9D, 9th Floor
Hon. George H. Wu

# TABLE OF CONTENTS


**I. INTRODUCTION** ........ 1

**II. THE APPROVED NOTICE PROGRAM REACHED THE CLASS, AND THE CLASS RESPONDED WITHOUT A SINGLE OBJECTION** ........ 2

**III. ARGUMENT** ........ 3

A. The 25% Fee Request is Justified by the Results, the Risk, and the Ninth Circuit Benchmark. ........ 3

B. The Results Obtained, Risk Borne by Class Counsel, Counsels' Contingent Investment and Negative Multiplier Compel Approval. ........ 4

1. Class Counsel achieved substantial benefits for the Class. ........ 4

2. The risks involved justify the requested award. ........ 7

3. The novelty and difficulty of the issues involved and Class Counsels' skill in presenting them warrant approval of the requested attorneys' fees. ........ 9

4. Lack of Objections by Class Members to Requested Fees Supports the Requested Award. ........ 10

5. Class Counsels' Lodestar Supports the Requested Fee Award. ........ 11

6. Class Counsels' hours expended are reasonable. ........ 11

7. Class Counsels' hourly rates are reasonable. ........ 12

8. Class Counsels' negative multiplier further supports the requested fees. ........ 13

C. Reimbursement of Litigation Costs is Warranted ........ 14

D. The Service Awards for the Named Plaintiffs are Warranted ........ 15

**IV. CONCLUSION** ........ 16

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Almon v. Conduent Bus. Servs., LLC*,
No. SA-19-CV-01075-XR, 2022 WL 902992 (W.D. Tex. Mar. 25, 2022) .......... 7

*Blum v. Stenson*,
465 U.S. 886 (1984) .......... 13

*Boeing Co. v. Van Gemert*,
444 U.S. 472 (1980) .......... 3

*Camacho v. Bridgeport Financial, Inc.*,
523 F.3d 973 (9th Cir. 2008) .......... 12

*Campos v. Converse, Inc.*,
No. ED-CV-2015-76-JGB-SPx, 2022 WL 4099756 (C.D. Cal. Aug. 15, 2022) .......... 8

*Cheryl Gaston v. FabFitFun, Inc.*,
2:20-CV-09534, 2021 WL 6496734 (C.D. Cal. Dec. 9, 2021) .......... 9

*Fitzhenry-Russell v. Coca-Cola Co.*,
5:17-CV-00603-EJD, 2019 WL 11557486 (N.D. Cal. Oct. 3, 2019) .......... 4

*Flores-Mendez v. Zoosk, Inc.,*
C-20-04929-WHA, 2022 WL 2967237 (N.D. Cal. July 27, 2022) .......... 7

*Garner v. State Farm Mut. Auto. Ins. Co.*,
CV-08-1365-CW (EMC), 2010 WL 1687829 (N.D. Cal. Apr. 22, 2010) .......... 10

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011
150 F.3d 1011 (9th Cir. 1998) .......... 9

*Hashemi v. Bosley, Inc.,*
21-CV-946, 2022 WL 2155117 (C.D. Cal. Feb. 22, 2022) .......... 9

*Hensley v. Eckerhart*,
461 U.S. 424 (1983) .......... 12

*Hope Med. Enters., Inc. v. Fagron Compounding Serv., LLC*,
2:19-CV-07748-CAS-PLAx, 2022 WL 826903 (C.D. Cal. Mar. 14, 2022) ............... 13

*Hopkins v. Stryker Sales Corp.*,
11-CV-02786-LHK, 2013 WL 496358 (N.D. Cal. Feb. 6, 2013) ............... 8

*In re Advoc. Aurora Health Pixel Litig.*,
740 F. Supp. 3d 736 (E.D. Wis. 2024) ............... 15

*In re Bluetooth Headset Prods. Liab. Litig.*,
654 F.3d 935 (9th Cir. 2011) ............... 4

*In re Equifax Inc. Customer Data Sec. Breach Litig.*,
1:17-MD-2800-TWT, 2020 WL 256132 (N.D. Ga. Mar. 17, 2020) ............... 5

*In re Equity Funding Corp. Sec. Litig.*,
438 F. Supp. 1303 (C.D. Cal. 1977) ............... 7

*In re Media Vision Tech. Sec. Litig*,
913 F. Supp. 1362 (N.D. Cal. 1996) ............... 14

*In re Mercury Interactive Corp. Sec. Litig.*,
618 F.3d 988 (9th Cir. 2010) ............... 4

*In re Omnivision Techs., Inc.*,
559 F. Supp. 2d 1036 (N.D. Cal. 2008) ............... 10

*In re TikTok, Inc., Consumer Priv. Litig.*,
617 F. Supp. 3d 904 (N.D. Ill. 2022) ............... 7

*In re Wash. Pub. Power Supply Sys. Sec. Litig.*,
19 F.3d 1291 (9th Cir. 1994) ............... 8, 13

In re Yahoo! Inc. Customer Data Sec. Breach Litig.,
20-16633, 2022 WL 2304236 (9th Cir. June 27, 2022) ............... 15

*In re Yahoo! Inc. Customer Data Sec. Breach Litig.*,
16-MD-02752-LHK, 2020 WL 4212811 (N.D. Cal. July 22, 2020) ............... 15

*Koenig v. Lime Crime, Inc.*,
16-CV-503, 2018 WL 11358228 (C.D. Cal. Apr. 2, 2018) ............... 9

*Marshall v. Northrop Grumman Corp.*,
2:16-CV-06794-AB-JC, 2020 WL 5668935 (C.D. Cal. Sept. 18, 2020) .................... 14
*McGlenn v. Driveline Retail Merch., Inc.*,
18-CV-2097, 2021 WL 165121 (C.D. Ill. Jan. 19, 2021) ............................................ 7
Medoff v. Minka Lighting, LLC,
2:22-CV-08885-HDV, 2024 WL 5275593 (C.D. Cal. July 10, 2024) ....................... 14
*Miller v. Ghirardelli Chocolate Co.*,
12-CV-04936-LB, 2015 WL 758094 (N.D. Cal. Feb. 20, 2015) .................................. 6
*Moreno v. Capital Bldg. Maint. & Cleaning Serv.*,
2021 WL 4133860 (N.D. Cal. Sept. 10, 2021) ........................................................... 14
*N.T.A.A. v. Nordstrom, Inc.*,
2:21-CV-00398-DDP-AGRx, 2024 WL 1723524 (C.D. Cal. Apr. 19, 2024) ........... 13
*Pfeiffer v. RadNet, Inc.*,
2:20-CV-09553-RGK-SK, 2022 WL 2189533 (C.D. Cal. Feb. 15, 2022) ................ 14
*Philips v. Munchery Inc.*,
19-CV-00469-JSC, 2021 WL 326924 (N.D. Cal. Feb. 1, 2021) ................................ 11
*Pokorny v. Quixtar, Inc.*,
C-07-0201 SC, 2013 WL 3790896 (N.D. Cal. July 18, 2013) ...................................... 6
*Rosado v. Ebay Inc.*,
5:12-cv-04005-EJD, 2016 WL 3401987 (N.D. Cal. June 21, 2016) ........................... 14
*Six (6) Mexican Workers v. Ariz. Citrus Growers*,
904 F.2d 1301 (9th Cir. 1990) .................................................................................. 4, 8
*Staton v. Boeing*,
327 F.3d 938 (9th Cir. 2003) ........................................................................................ 4
*Taylor v. Shutterfly, Inc.*,
5:18-CV-00266-BLF, 2021 WL 5810294 (N.D. Cal. Dec. 7, 2021) .......................... 14
*Van Gerwen v. Guarantee Mut. Life Co.*,
214 F.3d 1041 (9th Cir. 2000) ...................................................................................... 11

*Vizcaino v. Microsoft Corp.*,
290 F.3d 1043 (9th Cir. 2002) ........ passim

**Statutes**

Cal. Civ. Code § 56.35 ........ 3

**Other Authorities**

*Manual for Complex Litigation (Fourth) § 14.121 (2004)* ........ 4

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

In connection with the nationwide settlement of this data breach class action, Court-appointed Class Counsel respectfully seek an award of $737,500 in attorneys' fees amounting to 25% of the Settlement Fund, reimbursement of $31,121.32 in litigation costs essential to securing this result, and Service Awards of $2,500 to each of the six Class Representatives. These requests are consistent with awards in comparable data breach settlements, and each factor that courts within the Ninth Circuit consider confirms their reasonableness here.

The Settlement delivers substantial monetary and non-monetary relief to the Class: a $2,950,000 non-reversionary common fund presently expected to yield direct *pro rata* cash payments of roughly $50 to $88 per non-California class member and $100 to $176 per California class member; reimbursement of documented losses of up to $7,500 per individual; 2 years of credit-monitoring and identity protection services; and equitable relief requiring Defendant to implement additional cybersecurity measures to further secure personal information in its possession for a period of three years.

These results were obtained despite significant risks inherent in data breach litigation. Class Counsels' experience in this evolving and technically complex area of law enabled them to conduct a targeted investigation, obtain and analyze critical information, and negotiate a resolution that delivers real value to Class Members now while avoiding years of uncertain litigation.

Class Counsel also undertook this matter on a fully contingent basis, advancing all costs with no guarantee of recovery. To date, the response of the Class has been uniformly positive, with no objections received.

The fee sought by Class Counsel is also reasonable, both as a percentage of the fund, as Class Counsel seeks the 25% benchmark, and under the lodestar crosscheck. Because Class Counsel have a current lodestar in excess of $759,590, the fee sought

represents a negative multiplier of approximately .97 on Class Counsels' lodestar, further providing a strong, objective indicator of reasonableness.

## II. THE APPROVED NOTICE PROGRAM REACHED THE CLASS, AND THE CLASS RESPONDED WITHOUT A SINGLE OBJECTION[1]

This Court granted Plaintiffs' Motion for Preliminary Approval of Class Settlement on May 28, 2026, and certified a nationwide class for settlement purposes. ECF No. 73. As directed by the Court's order, Eisner Advisory Group, LLC ("EAG"), the Claims Administrator, sent the approved Notice to Class Members by email, or USPS mail, where a valid email address was not available. Supplemental Declaration of Brandon Schwartz of EAG in Support of Motion for Attorneys' Fees and Costs and Plaintiffs' Service Award ("Schwartz Decl."), attached as Exhibit 1 ¶¶ 5-7. Class Counsel supervised the implementation of the Notice Plan, audited the Settlement Website to ensure its accuracy and functionality, reviewed weekly reports from and conferred with EAG about the progress of the Notice Plan and the claim process. Counsel Declaration, attached as Exhibit 2, ¶ 16.

The deadline for Class Members to object or opt out of the Settlement is August 26, 2026, and the deadline to submit a claim is September 10, 2026. ECF No. 73 at 7. To date, the reaction of the Class has been overwhelmingly positive. The Claims Administrator has received 11,641 net valid claims to date (i.e., a roughly 2.9% claim rate, which is in line with similar settlements), no Class Members have objected to the Settlement, and only 2 Class Members have filed an exclusion request. Schwartz. Decl. ¶ 12. While claims are still being submitted, the Claims Administrator estimates a *pro rata* share of roughly $50 to $88 per non-California class member and $100 to $176 for each California based claimant. *Id.* ¶ 16.

[1] Plaintiffs provide a summary of the background of the litigation, the procedural history of this case, and the terms of the settlement in Plaintiffs' Memorandum of Points & Authorities in Support of Unopposed Motion for Preliminary Approval of Class Action Settlement. *See* ECF No. 54-1 at 2–12.

Following the filing of this Motion, Class Counsel will continue to oversee the notice and claims process, respond to Class Members' inquiries, seek final approval of the Settlement, respond to any objection that may be filed with respect to the Settlement, and litigate any appeals. Joint Declaration of Class Counsel Thomas E. Loeser, Yana Hart, and Bryan P. Thompson in Support of Motion for Attorneys' Fees and Costs and Plaintiffs' Service Awards ("Counsel Decl.") ¶ 32. The lodestar and the negative multiplier presented to the Court in this Motion do not include these later efforts.

## III. ARGUMENT

### A. The 25% Fee Request is Justified by the Results, the Risk, and the Ninth Circuit Benchmark.

Where Class Counsel secures a common benefit for the Class, an award of reasonable attorneys' fees and costs is warranted. *See Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980) ("[A] lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole."). One of Plaintiffs' claims arises under California's Confidentiality of Medical Information Act, which independently authorizes fee recovery for prevailing plaintiffs. Cal. Civ. Code § 56.35.

Plaintiffs seek an attorneys' fee award of $737,500, amounting to 25% of the $2,950,000 common fund, or 10.9% of the total Settlement Benefits made available to the Class, assuming the current value of the Credit Monitoring and Identity Theft Insurance Services benefit in addition to their monetary benefit.[2] Considering Class Counsels' lodestar is in excess of $759,590, this represents a negative .97 multiplier. *Id.*¶¶ 27-28. The requested fees are consistent with comparable settlements and supported by factors considered by the Ninth Circuit including: (a) the results achieved;

---

[2] This was calculated by combining the total Settlement Fund ($2,950,000) with the combined retail value of the CMIS claimed so far ($3,801,600.00), which produces the total settlement benefit amount of $6,751,600. The award sought ($737,500) is 10.9% of the total settlement benefit ($6,751,600). This will likely increase as additional claims are made and approved. Schwartz Decl. ¶ 22.

(b) the risk of litigation; (c) the skill required and the quality of work; and (d) the contingent nature of the fee. *See Vizcaino v. Microsoft Corp.,* 290 F.3d 1043 (9th Cir. 2002).

In common fund cases, courts within the Ninth Circuit have discretion to use one of two methods to determine whether the fee request is reasonable: (1) percentage-of-the-fund, or (2) lodestar plus a risk multiplier. *See, e.g.*, *Staton v. Boeing*, 327 F.3d 938, 967–68 (9th Cir. 2003); *In re Mercury Interactive Corp. Sec. Litig.*, 618 F.3d 988, 992 (9th Cir. 2010). While the court has discretion to use either method, "the primary basis of the fee award remains the percentage method." *Vizcaino,* 290 F.3d at 1050; *Fitzhenry-Russell v. Coca-Cola Co.*, No. 5:17-CV-00603-EJD, 2019 WL 11557486, at *8 (N.D. Cal. Oct. 3, 2019) ("Where a settlement involves a common fund, courts typically award attorneys' fees based on a percentage of the total settlement.").

The requested fees are reasonable under both methods, as discussed below.

**B. The Results Obtained, Risk Borne by Class Counsel, Counsels' Contingent Investment and Negative Multiplier Compel Approval.**

District courts may also adjust the fee award to account for several factors, including the quality of representation, the benefits obtained for the class, the complexity and novelty of the issues presented, and the risk of non-payment. *See In re Bluetooth Headset Prods. Liab. Litig.,* 654 F.3d 935, 942 (9th Cir. 2011). Here, the requested fee is reasonable given the relief obtained for the Settlement Class, the risks of continued data breach litigation (including challenges to standing, causation, damages, and class certification), and Class Counsels' contingent investment of time and resources.

**1. Class Counsel achieved substantial benefits for the Class.**

The most important factor in granting a fee award is the degree of success counsel achieved for the class. *See Vizcaino*, 290 F.3d at 1048; *see also Six (6) Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990). To measure that success, "the factor given the greatest emphasis is the size of the fund created, because a common

fund is itself the measure of success . . . [and] represents the benchmark from which a reasonable fee will be awarded." *Manual for Complex Litigation (Fourth) § 14.121 (2004)* (quotations omitted).

Here, Class Counsels' efforts resulted in an excellent result for the Class, delivering direct monetary relief together with meaningful non-monetary relief. Counsel Decl. ¶¶ 37–40. The Settlement provides a non-reversionary common fund to pay valid claims and measured against similar-sized data breach settlements in the Ninth Circuit, the per capita relief is $7.30,[3] which is consistent or above comparable awards. *See, e.g.*, *Hellyer et al. v. Smile Brands, Inc. et al.*, No. 8:21-cv-01886-DOC-ADS (C.D. Cal.) ($1.92 per class member); *In re Post Meds, Inc.*, No. 4:23-cv-05710-HSD (N.D. Cal.) ($3.74 per class member); *Cochran, et al. v. The Kroger Co. et al.,* No. 5:21-cv-01887-EJD (N.D. Cal.) ($1.31); *Adlouni v. UCLA Health Systems Auxiliary, et al.*, No. BC589243 (Cal. Super. Ct., 2019) ($0.44).

The Credit Monitoring and Identity Theft Insurance Services ("CMIS") benefit being offered is also significant. Given that the market value (i.e. retail value) for the Credit Monitoring and Identity Theft Insurance Services benefit offered is $30 per month per person ($720 over the twenty-four month coverage period offered), [4] if purchased by a single class member, the value anticipated to be delivered here is substantial. Plaintiffs estimate the total benefit of the CMIS will be at least $3,801,600.00, before excluding its cost to the Settlement Fund of $48,153.60. Schwartz Decl. ¶ 22. *See also In re Equifax Inc. Customer Data Sec. Breach Litig.*, No.

---

[3] Per capita amount is calculated by dividing the total settlement amount by the total number of class members, before deducting litigation costs, administration costs, and attorneys' fees. In this case, it would divide the common fund ($2,950,000) by the total number of Class members (404,296).

[4] The value of the Credit Monitoring and Identity Theft Insurance Services benefit is $360 per person annually ($720 over the twenty four-month period). Schwartz Decl. ¶ 22. The fund's actual cost is $9.12 per enrolled claimant for the full two year term – the rate Class Counsel negotiated with IDX. Id.

1:17-MD-2800-TWT, 2020 WL 256132, at *38 (N.D. Ga. Mar. 17, 2020), *aff'd in part, rev'd in part and remanded,* 999 F.3d 1247 (11th Cir. 2021) ("[C]ourts have often recognized the benefit of credit monitoring, use its retail cost as evidence of value, and consider that value in awarding fees.").

The Settlement also provides meaningful non-monetary relief because Defendant is required to take, maintain, or continue implementation of certain administrative and technical cybersecurity measures intended to further secure personal information within its systems for at least three years after final approval of the settlement, if granted by the Court. *See* Settlement Agreement ECF No. 54-3 ¶ 2.6.

Here, Class Counsels' attorneys' fee request, amounts to 25% of the Settlement Fund, and does not include the total value made available to the Class, including the Credit Monitoring and Identity Theft Insurance Services benefit, estimated at a retail value of $3,801,600.00 (which is likely to increase as additional claims are made) and three years of mandatory cybersecurity improvements. Schwartz Decl. ¶ 22. Courts expressly authorize consideration of both in evaluating the reasonableness of attorneys' fees. *See Pokorny v. Quixtar, Inc.*, No. C 07-0201 SC, 2013 WL 3790896, at *1 (N.D. Cal. July 18, 2013) (A "court may properly consider the value of injunctive relief obtained as a result of settlement in determining the appropriate fee"); *see also e.g.*, *Miller v. Ghirardelli Chocolate Co.*, No. 12-CV-04936-LB, 2015 WL 758094, at *5 (N.D. Cal. Feb. 20, 2015) ("When determining the value of a settlement, courts consider both the monetary and nonmonetary benefits that the settlement confers." (collecting cases)). Thus, Class Counsels' attorneys' fee request is reasonable and warranted.

But for Class Counsels' efforts, no recovery would have been possible, especially given the risks in this litigation, as discussed further below. The Settlement accomplishes the central goal of this litigation: providing redress to individuals impacted by the Data Security Incident and promoting improved data security practices to better protect Class Members' Private Information.

**2. The risks involved justify the requested award.**

The substantial degree of risk faced by Class Counsel also justifies the requested fee award. Data breach litigation can be "extremely risky" and complex, and "[r]isk is a relevant circumstance" in the fee analysis. *See Vizcaino*, 290 F.3d at 1048. "Data privacy law is a relatively undeveloped and technically complex body of law, which creates uncertainty and, therefore, additional risk for Class Counsel." *See In re TikTok, Inc., Consumer Priv. Litig.*, 617 F. Supp. 3d 904, 941 (N.D. Ill. 2022) (awarding 33% of $92 million settlement, where a case resolved in the early stages of litigation, and recognizing that "[t]he need to provide financial incentives for zealous and effective representation of consumers in legally and technologically complex data privacy cases such as this . . . weighs in favor of granting the request").

Given these risks and uncertainties inherent in data breach litigation, the Settlement represents a strong and meaningful outcome for the Settlement Class. Although Plaintiffs believe their case is strong, that confidence is tempered by the significant risks and expense associated with achieving and maintaining class certification through trial. Although courts have certified nationwide data breach cases, Defendant would have pointed out that a number have denied certification. A denial or reversal of class certification, like a loss on the merits, would effectively extinguish any recovery by the Settlement Class. Class certification in contested data breach cases is also far from assured, and recently several nationwide class certification orders have been vacated. *See Flores-Mendez v. Zoosk, Inc.,* No. C 20-04929 WHA, 2022 WL 2967237 (N.D. Cal. July 27, 2022); *Almon v. Conduent Bus. Servs., LLC*, No. SA-19-CV-01075-XR, 2022 WL 902992 (W.D. Tex. Mar. 25, 2022); *McGlenn v. Driveline Retail Merch., Inc.*, No. 18-CV-2097, 2021 WL 165121 (C.D. Ill. Jan. 19, 2021). Thus, the risk of achieving and maintaining class status through trial alone justifies this Settlement. Further underscoring Class Counsels' effective advocacy, Defendant was represented by experienced counsel, which contested liability. *See In re Equity Funding Corp. Sec. Litig.,* 438 F. Supp. 1303, 1337 (C.D. Cal. 1977) (the quality of opposing

counsel is important in evaluating the quality of class counsel's work). Because success was far from guaranteed, Class Counsels' willingness to take on the risk of nonpayment substantially benefited Plaintiffs and the Settlement Class. Accordingly, this factor favors the requested award.

The burdens borne by Class Counsel in taking on the litigation also support the requested award. *See Vizcaino*, 290 F.3d at 1050; *see also Six (6) Mexican Workers,* 904 F.2d at 1311. Class Counsel undertook this litigation on a purely contingency-fee basis, requiring them to shoulder not only the cost of hundreds of hours of dedicated attorney time, but also all out-of-pocket costs. Counsel Decl. ¶ 9. This Court and others have long recognized the public policy of rewarding attorneys for accepting representation on a contingency-fee basis. *See Campos v. Converse, Inc.,* No. EDCV201576JGBSPX, 2022 WL 4099756, at *6 (C.D. Cal. Aug. 15, 2022) (approving attorneys' fees of approximately 33% where "resulting lodestar multiplier of .51 is well-below the 'most common' multipliers of 1.5 to 3"); *In re Wash. Pub. Power Supply Sys. Sec. Litig.,* 19 F.3d 1291, 1299 (9th Cir. 1994). When counsel takes cases on a contingency-fee basis, the risk of non-payment after years of litigation also justifies a fee award. *See, e.g.*, *Hopkins v. Stryker Sales Corp.*, No. 11-CV-02786-LHK, 2013 WL 496358, at *3-6 (N.D. Cal. Feb. 6, 2013) (in awarding fees of 30 percent of the settlement, explaining that "Class Counsel took a significant risk investing in this case" because it "was conducted on an entirely contingent fee basis against a well-represented [d]efendant" and because "[a]ll of the financial risk of litigation was therefore assumed by Class Counsel, whose fee arrangement with Plaintiffs required Class Counsel to bear all the costs of litigation[.]"). While numerous other courts have granted a fee award of 33% or more, Plaintiffs' Counsel here is requesting simply the Ninth Circuit benchmark of 25%.

Class Counsels' commitment to pursuing this complex litigation to completion, despite the substantial risks, including receiving no compensation at all, merits recognition and reward in accordance with Ninth Circuit precedent. *See Vizcaino*, 290

F.3d at 1049.

**3. The novelty and difficulty of the issues involved and Class Counsels' skill in presenting them warrant approval of the requested attorneys' fees.**

This case involves complicated issues on the merits, in the constantly evolving area of data privacy, and Class Counsel are highly experienced and skilled in this area.

Data breach litigation is particularly complex regarding damages and causation, and Plaintiffs faced a substantial risk of losing at summary judgment or trial. *See Hashemi v. Bosley, Inc.*, No. 21-cv-946, 2022 WL 2155117, at *7 (C.D. Cal. Feb. 22, 2022) ("[D]ata breach class actions are a relatively new type of litigation and that damages methodologies in data breach cases are largely untested and have yet to be presented to a jury."); *Cheryl Gaston v. FabFitFun, Inc.*, No. 2:20-cv-09534, 2021 WL 6496734, at *3 (C.D. Cal. Dec. 9, 2021) ("Historically, data breach cases have experienced minimal success in moving for class certification."); *Koenig v. Lime Crime, Inc.*, No. 16-cv-503, 2018 WL 11358228, at *3 (C.D. Cal. Apr. 2, 2018) (approving data breach settlement and finding, in part, "[b]ecause of the difficulty of proving damages and causation, Plaintiff faced a substantial risk of losing at summary judgment or at trial."). It also entails significant expenses, requiring involvement of experts in cybersecurity, causation, and damages. As those costs accumulate over the course of expert discovery, dispositive motions, class certification, trial, and potential appeals, the net recovery available to the Class would be substantially reduced. Given the relatively modest size of the Settlement Class, continued litigation could materially reduce the net value ultimately available to class members, even if Plaintiffs ultimately prevailed years from now.

Courts also consider the experience and skill of counsel in determining an appropriate fee award. *See Hanlon v. Chrysler Corp.* 150 F.3d 1011, 1029 (9th Cir. 1998). Given the complexity and novelty of this litigation, Class Counsels' proven reputation, deep experience, and skill were essential to the success of this litigation.

Litigation of this type is also inherently risky. This is an area of the law that is still developing, with courts coming to different interpretations of the relevant statutes, as well as on liability and other factors, creating additional uncertainty. Class Counsel have extensive experience litigating class actions and other complex civil litigation, particularly litigation involving data breach and other data privacy issues. *See* Counsel Declaration in Support of Motion for Preliminary Approval of Class Action Settlement, ECF 54-2 ¶¶ 29–32 (describing experience of Class Counsel and their firms). It is extremely important that complex cases like this are staffed by skilled and experienced counsel, and recovery of fees properly incentivizes this pursuit of justice on behalf of everyday people.

Class Counsel have also consistently displayed a high level of skill regarding the complex legal issues presented in this litigation. The lawsuit raised complex issues of law and fact that required skill to maneuver. Over the course of this litigation, Class Counsel worked diligently to ultimately secure a settlement delivering to Class Members real and substantial benefits, while also requiring business practice changes that will substantially benefit the Class Members through improved security for their Private Information.

Class Counsel were able to achieve the Settlement due to considerable expertise and experience in prosecuting and settling complex class actions. *See* ECF 54-4 (Clarkson Law Firm Resume); ECF 54-5 (Cotchett, Pitre & McCarthy Firm Resume).

**4. Lack of Objections by Class Members to Requested Fees Supports the Requested Award.**

Finally, the current lack of objections from the class to the Settlement or fees requested further demonstrates the reasonableness and fairness of the fees request, as does the only 2 opt-out requests to date. *See, e.g.*, *Garner v. State Farm Mut. Auto. Ins. Co.*, No. CV081365CW (EMC), 2010 WL 1687829, at *2 (N.D. Cal. Apr. 22, 2010) (noting "a single objection out of a sizeable class, after notice, further demonstrates the reasonableness and fairness of Class Counsels' request"); *In re Omnivision Techs., Inc.*,

559 F. Supp. 2d 1036, 1043 (N.D. Cal. 2008) ("The Court received objections from only 3 out of 57,630 potential Class Members who received the notice. By any standard, the lack of objection of the Class Members favors approval of the Settlement."). Class Counsel informed the Class, through Plaintiffs' Preliminary Approval Motion and Notice, that Class Counsel intended to seek up to 25% of the common fund, consistent with the Settlement. To date, there have been no objections to the anticipated fees' request, while 11,641 net valid claims have been submitted. Schwartz Decl., ¶¶ 13-15. The Settlement Class's response has been overwhelmingly positive. *Id*. Thus, well-versed and experienced Class Counsel have achieved an excellent result for the Settlement Class by investing significant resources to take significant risks to litigate complex issues, with no guarantee of remuneration, such that the requested 25% award is warranted and consistent with the numerous similar cases described *supra* at page 8 and *infra* at pages 13-14 (collecting cases).

**5. Class Counsels' Lodestar Supports the Requested Fee Award.**

The requested fee is also appropriate under the lodestar cross check to confirm the reasonableness of the fee. *See Philips v. Munchery Inc.*, No. 19-CV-00469-JSC, 2021 WL 326924, at *9 (N.D. Cal. Feb. 1, 2021). As the Ninth Circuit explained in *Van Gerwen,* "[t]he lodestar amount is presumptively the reasonable fee amount, and thus a multiplier may be used to adjust the lodestar amount upward or downward only in 'rare' and 'exceptional' cases, supported by both 'specific evidence' on the record and detailed findings by the lower courts' that the lodestar amount is unreasonably low or unreasonably high." *Van Gerwen v. Guarantee Mut. Life Co.,* 214 F.3d 1041, 1045 (9th Cir. 2000). Here, Class Counsels' lodestar is in excess of $759,590, representing a negative multiplier of .97, which is well below multipliers other courts have regularly granted, and thus strongly supports the finding of reasonableness of Class Counsels' requested fee.

**6. Class Counsels' hours expended are reasonable.**

From this case's inception to the present, Class Counsel recorded a combined

795.1 hours litigating this matter. Counsel Decl. ¶ 27. Because this was a contingency-fee case, Class Counsel had no incentive to spend unnecessary time on tasks. *Id*. ¶ 34. The hours Class Counsel spent investigating and litigating the case were limited to that reasonably necessary to position the Class to succeed if it proceeded to class certification, on the merits at trial, in any subsequent appeals, and, ultimately, to achieve the exceptional settlement of Plaintiffs' and the Settlement Class's claims. Accordingly, the hours expended were reasonably and necessarily incurred. *Id*. Class Counsel have also broken down their time by types of tasks in their declaration, which provides additional information as to the appropriate time and resources dedicated to this case. *Id*. ¶¶ 19-25.[5]

**7. Class Counsels' hourly rates are reasonable.**

Under the lodestar method, a reasonable hourly rate "is the rate prevailing in the community for similar work performed by attorneys of comparable skill, experience, and reputation." *Camacho v. Bridgeport Financial, Inc.*, 523 F.3d 973, 979 (9th Cir. 2008). Ordinarily, reasonable hourly rates are based on each attorney's *current* hourly rates. *Vizcaino*, 290 F.3d at 1051. The relevant community is the location where the district court sits—here, the Central District of California. *Camacho,* 523 F.3d at 979. Courts also consider billing rates in excess of prevailing market rates justified for contingency fee work. *Hensley v. Eckerhart*, 461 U.S. 424, 448-449, n. 8 (1983) (Brennan, J., concurring) ("Attorneys who take cases on contingency, thus deferring payment of their fees until the case has ended and taking upon themselves the risk that they will receive no payment at all, generally receive far more in winning cases than

[5] The firms which represented plaintiffs in the related "*Anderson*" state court action have also, separately, billed over 298.50 hours and in excess of $218,054.25 lodestar. These hours and amounts are not included in the lodestar figures stated above. However, if they were, the combined lodestar of all plaintiffs' firms would be $977,644.25 for a total of 1,093.6 hours. Measured against that combined lodestar, the requested fee of $737,500 represents approximately 75.4% of total lodestar, reflecting a negative multiplier of approximately 0.75.

they would if they charged an hourly rate.").

Here, Class Counsels' hourly rates are reasonable in light of their significant experience, expertise, and skill in litigating complex privacy class actions. Counsel Decl. ¶¶ 34-35; *see Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984) (a prevailing market rate is one "in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation"). Class Counsels' customary rates of $490-$900 for Associates, and $1,100-$1,385 for Partners and Counsel, are in line with prevailing rates in this forum, have been regularly approved by courts in this forum and other courts. *See, e.g.*, *Doe v. Marinhealth Medical Center*, No. CV0002218, (Cal. Super. Ct. Nov. 19, 2025) (approving Clarkson's fees and costs with hourly rates ranging from $980-$1,270 for Partners, $425-$660 for Associates, and $380 for paralegals.); *Kandel v. Dr. Dennis Gross Skincare, LLC*, No. 1:23-cv-01967-ER (S.D.NY Oct. 31, 2024) (approving Clarkson's fees and costs with hourly rates ranging from $935-$1,210 for Partners, $440-$850 for Associates, and $360 for paralegals.); *Hope Med. Enters., Inc. v. Fagrgon Compounding Serv., LLC,* No. 219-CV-07748-CAS-PLAx, 2022 WL 826903, at *3 (C.D. Cal. Mar. 14, 2022) (finding rates "of $895 to $1,295 per hour for partners and counsel, and between $565 and $985 for associates is reasonable within the legal community of Los Angeles for attorneys of similar skill and experience"); *N.T.A.A. v. Nordstrom, Inc.,* No. 221CV00398DDPAGRX, 2024 WL 1723524, at *4 (C.D. Cal. Apr. 19, 2024) (finding rates between $848 to $1,364.70 for partners and senior counsel to be reasonable).

**8. Class Counsels' negative multiplier further supports the requested fees.**

Using the reasonable hourly rates and hours expended in the course of this Litigation, Class Counsels' lodestar is in excess of $759,590. Counsel Decl. ¶ 28. In class actions, courts "routinely enhance" the lodestar through a multiplier. *Wash. Pub. Power Supply Sys., 19 F.3d at 1299* ("[C]ourts have routinely enhanced the lodestar to reflect the risk of nonpayment by paying them a premium over their normal hourly rates

for winning contingency cases."). Class Counsel here seeks a negative multiplier of approximately .97, which further supports the finding of reasonableness. *See Moreno v. Capital Bldg. Maint. & Cleaning Serv.*, 2021 WL 4133860, at *6 (N.D. Cal. Sept. 10, 2021) (awarding one-third of the common fund where there was a substantial negative multiplier); *Taylor v. Shutterfly, Inc.,* No. 5:18-CV-00266-BLF, 2021 WL 5810294, at *9 (N.D. Cal. Dec. 7, 2021) ("The fact that [p]laintiff's counsel are seeking substantially less in fees than they reasonably incurred further demonstrates the reasonableness of the fee award" (collecting cases)).

Likewise, the negative multiplier "strongly suggests the reasonableness" of the requested fee. *Rosado v. Ebay Inc.,* No. 5:12-cv-04005-EJD, 2016 WL 3401987, at *8 (N.D. Cal. June 21, 2016); *see e.g.*, *Marshall v. Northrop Grumman Corp*., No. 2:16-cv-06794-AB-JC, 2020 WL 5668935, at *7 (C.D. Cal. Sept. 18, 2020) (awarding one-third of the fund where class counsel's lodestar was greater than the requested award).

**C. Reimbursement of Litigation Costs is Warranted**

"Reasonable costs and expenses incurred by an attorney who creates or preserves a common fund are reimbursed proportionately by those class members who benefit from the settlement." *Medoff v. Minka Lighting, LLC,* No. 2:22-CV-08885-HDV, 2024 WL 5275593, at *2 (C.D. Cal. July 10, 2024) (citing *In re Media Vision Tech. Sec. Litig.*, 913 F. Supp. 1362, 1366 (N.D. Cal. 1996)). Here, Class Counsel initially estimated litigation costs not to exceed $30,000. ECF 54-1, pg. 8. Class Counsel seeks a modest increase of that number, in the amount $31,121.32. These costs consist of mediation fees, filing fees, services fees, and travel for Class Counsel. These types of costs are regularly approved because they are reasonably necessary to case prosecution. *See, e.g., Pfeiffer v. RadNet, Inc.,* No. 2:20-CV-09553-RGK-SK, 2022 WL 2189533, at *4 (C.D. Cal. Feb. 15, 2022) (court awarded attorneys reimbursement of "expenses such as filing fees, service of process, online research, travel, photocopying, and fees for mediation…[b]ecause these costs are the type that would customarily be billed to fee-paying clients.") (internal citation omitted). Accordingly, Class Counsel respectfully

requests reimbursement of $31,121.32 in litigation expenses.

**D. The Service Awards for the Named Plaintiffs are Warranted**

Class Counsel move for $2,500 in Service Awards for each Class Representative (a total of $15,000) for their active participation and dedication to this litigation. Counsel Decl., ¶ 41.

The Class Representatives— G.E., Donald Hatch, Bradley Anderson, Daniel Martinez, Lorenzo Montoya, and Elizabeth Orozco-Preza— have participated in this Litigation from its inception, spent time providing information to Class Counsel, reviewed and approved key filings and settlement materials, and remained available to assist with case strategy and settlement discussions as needed. By serving as Class Representatives, they also undertook obligations and potential burdens associated with litigation, including providing information and engaging in regular communication with their counsel, as well as the risk of scrutiny concerning their experiences related to the Data Security Incident. These Service Awards reasonably compensate the Class Representatives for their efforts and contributions on behalf of the Settlement Class.

The proposed Service Awards are comparable to those awarded in recent data privacy settlements. *See, e.g., In re Yahoo! Inc. Customer Data Sec. Breach Litig.,* No. 16-MD-02752-LHK, 2020 WL 4212811, at *44 (N.D. Cal. July 22, 2020), *aff'd,* No. 20-16633, 2022 WL 2304236 (9th Cir. June 27, 2022*)* (approving $2,500 to $7,500 awards in data breach case), *In re Advoc. Aurora Health Pixel Litig.*, 740 F. Supp. 3d 736, 763-64 (E.D. Wis. 2024) (approving $3,500 incentive award for each class representative in data privacy settlement).

## IV. CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court approve their request for: (i) an award of reasonable attorneys' fees in the amount of $737,500; (ii) reimbursement of reasonable and necessary litigation costs in the amount of $31,121.32; and (iii) a $2,500 Service Award for each of the Class Representatives, totaling $15,000.

Dated: August 12, 2026

Respectfully submitted,

By: <u>*/s/Yana Hart*</u>

Ryan J. Clarkson (SBN 257074)
*rclarkson@clarksonlawfirm.com*
Yana Hart (SBN 306499)
*yhart@clarksonlawfirm.com*
Bryan P. Thompson (SBN 354683)
*bthompson@clarksonlawfirm.com*
**CLARKSON LAW FIRM, P.C.**
22525 Pacific Coast Highway
Malibu, CA 90265
Tel: (213) 788-4050
Fax: (213) 788-4070

Thomas E. Loeser (SBN: 202724)
**COTCHETT, PITRE & McCARTHY, LLP**
840 Malcolm Road
Burlingame, CA 94010
Tel: (206) 802-1272
Fax: (650) 697-0577
tloeser@cpmlegal.com

*Counsel for Plaintiffs and the Settlement Class*

**ATTESTATION UNDER LOCAL RULE 5-4.3.4(a)(2)(i)**

Pursuant to Civil Local Rule 5-4.3.4(a)(2)(i) the undersigned filer hereby attests that all signatories listed, and on whose behalf the filing is submitted, concur in the filing's content, and have authorized the filing.

DATED: August 12, 2026

**CLARKSON LAW FIRM, P.C.**

*<u>/s/ Yana Hart</u>*
Yana Hart, Esq.

**CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 11-6.1**

I certify that this memorandum contains 5,038 words, as counted by the Word-processing program, including all headings, footnotes, and quotations, but excluding the caption, tables, and the signature block.

DATED: August 12, 2026

**CLARKSON LAW FIRM, P.C.**

*/s/ Yana Hart*
Yana Hart, Esq.