**CLARKSON LAW FIRM, P.C.**
Ryan J. Clarkson, Esq. (SBN 257074)
*rclarkson@clarksonlawfirm.com*
Yana Hart, Esq. (SBN 306499)
*yhart@clarksonlawfirm.com*
Bryan P. Thompson, Esq. (SBN 354683)
*bthompson@clarksonlawfirm.com*
22525 Pacific Coast Highway
Malibu, CA 90265
Tel: (213) 788-4050

**COTCHETT, PITRE & McCARTHY, LLP**
Thomas E. Loeser (SBN 202724)
*tloeser@cpmlegal.com*
840 Malcolm Road
Burlingame, CA 94010
Tel: (206) 802-1272
Fax: (650) 697-0577

*Counsel for Plaintiffs and the Proposed Class*

**THE UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| IN RE: STIIIZY INC., DATA BREACH SECURITY LITIGATION,<br><br>This Document Relates To:<br>*All cases* | Master File No.: 2:25-cv-00490-GW-SSC<br><br>**DECLARATION OF BRANDON SCHWARTZ IN SUPPORT OF PLAINTIFFS' MOTION FOR ATTORNEYS' FEES, COSTS, AND SERVICE AWARDS** |

I, Brandon Schwartz, declare as follows:

1. I serve as the Director of Legal Notice for Eisner Advisory Group, LLC ("EAG" or "EisnerAmper"), the Claims Administrator appointed by the Court in the above-captioned action (the "Action") pursuant to the Order Granting Preliminary Approval of Class Action Settlement entered May 28, 2026 (ECF 73, ¶ 11) (the "Preliminary Approval Order"). I submit this Declaration in support of Plaintiffs' Motion for Attorneys' Fees, Costs, and Service Awards. The statements set forth herein are based on my personal knowledge, on information provided to me by other EAG professionals working under my supervision, and on my review of records maintained by EAG in the ordinary course of administering this Settlement. If called as a witness, I could and would testify competently to the matters stated herein.

2. EAG is a full-service administration firm providing legal administration services, including the design, development, and implementation of unbiased complex legal notification programs. My professional background, qualifications, and class action experience are set forth in my *Declaration Regarding Notice Plan and Settlement Administration* dated April 9, 2026 (ECF 54-12), and the curriculum vitae submitted therewith, as well as in my Supplemental Declaration dated May 18, 2026 (ECF 67).

3. EAG's duties as Claims Administrator include implementing the Court-approved Notice Plan; establishing and maintaining the Settlement Website and a dedicated toll-free hotline; receiving and tracking requests for exclusion and objections; receiving, reviewing, validating, and adjudicating claims, including fraud detection and de-duplication; corresponding with Class Members; and, following final approval, distributing Settlement benefits.

4. This Declaration reports on the status of the notice program and claims administration as of August 10, 2026. Because the claims review process

remains ongoing, the figures reported below are subject to change, and EAG will provide updated figures in advance of the Final Approval Hearing, currently set for October 19, 2026 (ECF 73, ¶ 22).

**NOTICE PROGRAM AS IMPLEMENTED**

5. The Preliminary Approval Order directed that Defendant provide Class Member information to EAG no later than June 2, 2026, and set June 27, 2026, as the Notice Date on which EAG was to commence Class Notice (ECF 73, ¶¶ 9, 18). Defendant timely provided EAG with the Direct Notice List, and EAG commenced the Notice Program by the Court-ordered Notice Date. After processing, de-duplication, and address hygiene, the Direct Notice List identified 404,296 Class Member records. EAG implemented the Notice Plan described in my April 9, 2026, Declaration (ECF 54-12), consisting of direct email notice, direct mail postcard notice, a supplemental digital banner campaign, a press release, publication notice under the California Consumer Legal Remedies Act, a Settlement Website, and a dedicated toll-free hotline.

6. **Direct Email Notice**. EAG transmitted the Email Notice to all Class Members for whom a facially valid email address appeared in the Direct Notice List. Before sending the Email Notice, EAG performed an email hygiene and verification process designed to protect the integrity of the email campaign and maximize deliverability. The process included deduplication, syntax validation, misspelled domain detection and correction, domain and risk validation. Email addresses for 74,242 Class Member records passed the hygiene and verification process. As of August 10, 2026, EAG had sent 74,242 Email Notices (18.36% of the Class), of which 70,539 (17.45%) were successfully delivered and 3,703 (0.92%) were returned as bounced or otherwise undeliverable.

7. **Direct Mail Notice.** EAG mailed the Postcard Notice by USPS First Class Mail to all Class Members for whom a mailing address was available, and

no valid email address existed, or whose Email Notice was returned as undeliverable. All addresses were updated against the National Change of Address database before mailing. As of August 10, 2026, EAG had mailed 258,015 Postcard Notices (63.82% of the Class), of which 24,521 (6.07%) were returned as undeliverable. EAG performed skip tracing on returned mail and re-mailed 19,250 Postcard Notices (4.76% of the Class). Of the re-mail notices, 291 (0.07%) Postcard Notices were returned as undeliverable.

8. **Direct Notice Reach.** As of August 10, 2026, 322,992 Class Members had received direct notice — 70,539 by email (17.45%) and 252,453 by mail (62.44%) — representing an overall direct notice reach of 79.89% of the Class. In my professional opinion, that reach exceeds the standard of practicability contemplated by Rule 23 and the Federal Judicial Center's guidance.

9. **Supplemental Notice.** Consistent with the Notice Plan, EAG implemented a supplemental digital banner notice campaign delivered programmatically through the Google Display Network and contextually targeted to adults twenty-one years of age and older who have demonstrated an interest in cannabis dispensaries, with approximately 75% of impressions geotargeted to California and the remaining impressions targeted nationally; distributed a press release over PRNewswire's US1 and Hispanic Newslines, which together reach more than 20,000 media outlets in the United States; and, to satisfy the notice requirements of the California Consumer Legal Remedies Act, placed the Short Notice as a quarter-page advertisement in the CA/NV/AZ/NM regional print edition of USA Today once a week for four consecutive weeks.

10. **Settlement Website and Toll-Free Hotline.** EAG established and continues to maintain a dedicated Settlement Website (www.stiiizydatabreachsettlement.com), which permits Class Members to submit Claim Forms electronically and hosts the Short Form Notice, Long Form Notice,

Claim Form, Exclusion Request Form, Settlement Agreement, Consolidated Complaint, and the preliminary approval papers. The website also hosts Spanish translations of the Claim Form and Long Form Notice. Consistent with the Notice Plan, Plaintiffs' Motion for Attorneys' Fees, Costs, and Service Awards and the supporting papers will be posted to the Settlement Website upon filing so that Class Members may review them. EAG also maintains a dedicated toll-free hotline, which is available twenty-four hours per day, seven days a week. Class Members can call and interact with an interactive voice response ("IVR") system that provides important settlement information. The toll-free number also offers the ability to speak with a live operator if calling Monday through Friday between the hours of 9:00 a.m. and 6:00 p.m. US Central Time, or to leave a voicemail to address specific questions or requests and receive a call back.

11. **CAFA Notice.** On April 17, 2026, as directed by the Preliminary Approval Order (ECF 73, ¶ 21), EAG prepared and served the notices required by the Class Action Fairness Act of 2005, 28 U.S.C. § 1715, on the Attorney General of the United States and the Attorneys General of each state in which a Settlement Class Member resides. No federal or state official has objected to or otherwise responded adversely to the Settlement.

## REQUESTS FOR EXCLUSION AND OBJECTIONS

12. EAG maintains a dedicated Post Office Box and email address for the receipt of requests for exclusion and monitors both on an ongoing basis. As of August 10, 2026, EAG has received two (2) requests for exclusion from the Settlement Class. Copies of those requests have been provided to counsel for the Parties.

13. As of August 10, 2026, EAG has received no objections to the Settlement, to Class Counsel's application for attorneys' fees and expenses, or to the requested Service Awards. Under the Preliminary Approval Order, the deadline

to object to the Settlement and the deadline to request exclusion are both August 26, 2026, and the deadline to submit a claim is September 10, 2026 (ECF 73, ¶¶ 12, 15, 17). Those deadlines have not yet passed. EAG will report any additional requests for exclusion or objections received before the Final Approval Hearing.

**CLAIMS RECEIVED AND CLAIMS REVIEW**

14. As of August 10, 2026, EAG had received 117,165 claim submissions. Consistent with EAG's standard fraud-detection and validation protocols, EAG identified and removed 99,368 submissions as high-confidence fraud, 1,863 submissions as suspicious, 639 duplicate submissions, and 3,654 submissions from individuals who are not Class Members. After that review, there are 11,641 net valid claims.

15. Of the 11,641 net valid claims, 11,578 claims sought the *pro rata* cash payment (8,762 by California Subclass members and 2,816 by non-California Class Members), 63 claims sought reimbursement of documented losses, and 5,318 claims elected the credit monitoring and identity protection services benefit ("CMIS"), which Class Members could elect in addition to, and not in lieu of, a cash payment. Based on EAG's review to date, 11,480 *pro rata* cash payment claims (8,190 California and 3,290 non-California), one documented loss claim, and 5,280 CMIS claims have been approved. For those individuals who are Class Members and who requested a Documented Loss payment, but who were denied or whose total losses are less than the *pro rata* amount, the Settlement Fund will provide them with the *pro rata* cash payment instead.

16. Measured in dollars, the total amount claimed across all net valid claims is $2,029,869.86, of which $1,731,052.68 has been approved to date. Those figures include $1,789,920.00 in *pro rata* cash payment claims ($1,730,960.00 approved) and $239,949.86 in documented loss claims ($92.68 approved). For purposes of this calculation, EAG applied an estimated per-claim value of $176.00

for California Subclass members and $88.00 for non-California Class Members, though this will differ as claims are still being submitted and verified. Currently, we estimate a *pro rata* payment of roughly $50 to $88 per non-California class member and $100 to $176 per California Class Member.

17. The current disposition of the 11,641 net valid claims is as follows: 10,984 claims have been approved with no adjustment required ($1,687,312.00 claimed and approved); 558 claims have been approved with adjustment ($326,745.86 claimed, $43,740.68 approved); and 99 claims are pending validation ($15,812.00 claimed). Class Members whose claims are approved with adjustment will be issued an Award Letter explaining EAG's determination and given an opportunity to cure the identified defect.

18. EAG's review of the remaining pending claims is ongoing, and EAG will provide an updated claims report in advance of the Final Approval Hearing.

**CREDIT MONITORING AND IDENTITY PROTECTION**

19. The CMIS benefit made available to Class Members under the Settlement is provided by IDX, which is one of the most established and widely used data breach response companies in the United States. Founded in 2003, IDX has developed what has become a leading platform for breach notification, identity protection, credit monitoring, and dark web monitoring. IDX has protected more than 100 million consumers and is trusted by Fortune 500 companies, federal and state government agencies (including OPM, IRS, SSA, NASA, and FEMA), and thousands of other organizations, and has administered breach response services in connection with some of the largest data incidents on record, including the Change Healthcare ransomware attack, which affected more than 126 million records.

20. The services offered to Class Members include credit monitoring at all three credit bureaus (Experian, Equifax, and TransUnion); up to $1,000,000 in

reimbursement insurance for damages related to identity theft resulting from a data breach; fully managed identity recovery by ACFE-certified recovery experts; CyberScan™ dark web surveillance, which monitors criminal websites, chat rooms, and Internet bulletin boards for stolen identities and alerts the consumer when their personal information appears; monitoring of change of address, payday loan, and court record and booking activity; and online educational and advisory resources. Additional detail regarding these services was provided as Exhibit A to my Supplemental Declaration (ECF 67-1).

21. In my Supplemental Declaration, I estimated, based on enrollment patterns observed across comparable data breach settlements, that approximately 60% of Class Members submitting valid and approved claims would elect the CMIS benefit, and that a data breach class action of this type would typically generate a claims rate of approximately 2% to 5%. The results of the claims period are consistent with those estimates: of the 11,641 net valid claims received, 5,318 elected the CMIS benefit, and 5,280 CMIS elections have been approved to date.

22. The cost of the CMIS benefit to the Settlement Fund is $9.12 per enrolled Class Member for a twenty-four month subscription. Based on the 5,280 CMIS elections approved to date, the cost of the CMIS benefit to the Settlement Fund is approximately $48,153.60, and, if every one of the 5,318 CMIS elections received were ultimately approved, that cost would be approximately $48,500.16. Both figures are substantially below the $176,727.36 in CMIS costs projected at a 5% claims rate in Plaintiffs' supplemental briefing (ECF 66). At IDX's retail rate of $720 per twenty-four month subscription, the 5,280 approved CMIS elections represent approximately $3,801,600.00 in retail-value identity protection services delivered to Class Members, at a cost to the Settlement Fund of less than $49,000.

## NOTICE AND ADMINISTRATION COSTS

23. In my April 9, 2026, Declaration, EAG estimated notice and administration costs of $151,556, exclusive of postage-related hard costs anticipated to be approximately $113,084, based on an assumed 5% claims rate (ECF 54-12 ¶ 26). In my May 18, 2026, Supplemental Declaration, after Defense Counsel identified the need for additional data review services to obtain contact information for certain Class Members, that estimate was revised to $280,840 at a 5% claims rate, consisting of $167,756 in administration costs and $113,084 in postage-related hard costs. EAG also provided an alternate estimate of $324,816 at a 10% claims rate, consisting of $204,283 in administration costs and $120,533 in postage-related hard costs.

24. As of the date of this Declaration and based on current number of claims received, EAG has incurred $242,957.38 in notice and administration fees and costs, and EAG estimates that total notice and administration costs through the completion of the administration will be $313,741.56. EAG's notice and administration costs are payable from the Settlement Fund pursuant to the Settlement Agreement and are separate from, and not included in, the attorneys' fees, litigation costs, and Service Awards sought by Plaintiffs.

25. EAG has no financial interest in the outcome of Plaintiffs' Motion for Attorneys' Fees, Costs, and Service Awards. EAG's compensation is not contingent on the amount of any fee award or Service Award approved by the Court.

26. Consistent with the Notice Plan and the Court-approved Notices, Class Members were advised that Class Counsel would apply to the Court for an award of attorneys' fees and reimbursement of litigation costs, and that Plaintiffs would request Service Awards, and that those papers would be posted to the Settlement Website. EAG will post Plaintiffs' Motion for Attorneys' Fees, Costs,

and Service Awards to the Settlement Website upon filing. Because the Preliminary Approval Order requires that motion to be filed by August 12, 2026, and sets the objection deadline at August 26, 2026 (ECF 73, ¶¶ 12, 18), Class Members will have the motion available to review for a period of at least fourteen days before the deadline to object.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

Executed this 12th day of August, 2026 in Portland, Oregon.

Brandon Schwartz